Totten, J.,
delivered the opinion of the court.
This action in covenant is founded on a bond for $250, with a condition thereto, to the following effect: that whereas, George W. Mitchell, administrator, had recovered judgment against said Riggs, for $92 15, before a Justice of the peace, said Riggs had caused the same to be removed to the Circuit Court, where it was then pending; now if said Sherley shall stand the suit, and in case of judgment against said Riggs, “ shall pay all costs and damages and keep the said Riggs harmless,” then the obligation to be void. The defendant pleaded covenant performed, with leave to give special matter in evidence.
It appeared, on the trial, that Riggs claimed a credit on said judgment, for fifty dollars, to obtain which he had caused it to be removed to the Circuit Court, for a new trial; the balance of the judgment was admitted, as it seems, to be just. It also appeared, that Riggs was a very poor man, in fact, insolvent, and that at the execution of said bond, he was about to remove, and did remove from the State. He gave to Sherley, a wagon and harness, worth-one hundred dollars, as the consideration of the bond, and Sherley agreed to attend to the suit and pay the judgment that might be rendered, *54 it being understood that the judgment before the Justice was subject to the credit of fifty dollars. It also appears that Riggs was poor and destitute, and that after parting with a portion of his effects before named, to Sherley, he was unable to effect his removal, on which it seems he had resolved, without the voluntary aid of a relation. It does not appear that defendant paid any attention to the suit, and he has failed to pay any part of the judgment, or in anywise to keep his covenant.
The verdict was for the plaintiff for $145 15, the defendant moved for a new trial, and the motion being overruled, he has appealed in error to this court.
The defence relied upon is, that the contract was for an illegal maintenance, and it is urged, that for this illegality, the court will refuse to enforce it.
In the first place then, what is illegal maintenance ? It is defined to be an officious intermeddling in a suit, that no way belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it, and it is held to be an offence against public justice, as it keeps alive strife and contention, and perverts the remedial process of the law into an engine of oppression. 4 Bl. Com. 135.
It would seem, that this definition, general and comprehensive as it is, in its terms, was intended to embrace the ancient doctrine on this subject, which, however, appropriate to the state of things then existing, would now be considered as unreasonable and absurd. Thus, it is said to be unlawful maintenance, to assist another with money to carry on his suit, as by retaining counsel for him, or otherwise bearing him out in the expense: or by friendship or interest to save such expense, when it would otherwise be incurred, or to give any “ public countenance” to another in support of his suit. And the reason assigned is, that such practice tends to obstruct the course of justice, and to discourage and *55 oppress the other party.
Such was the general doctrine of maintenance at an early period in the history of English law, when it was not unusual for men to enter into formal combinations to support each other in law suits, and for men of wealth and power to attempt to influence the administration of justice. See 1 Russell on Cr. 176; Co. Litt. 368.
But a pure, enlightened and independent judiciary in England, and not the laws against maintenance, have long' since suppressed such abuses there, and it may be safely said that they have rarely, if ever, had existence, in American Courts: and therefore, it is understood, that the rigid doctrine of maintenance, as it was held at an early period, has been greatly modified in modern decisions.
Thus, in Master v. Miller, 4 T. R. 340, Buller, Justice, says, “ It is curious and not altogether useless, to see how the doctrine of maintenance has, from time to time, been received in Westminster Hall. At one time, not only he who laid out money to assist another in his cause, but he that by friendship or interest saved him an expense that he would otherwise be put to, wás held guilty of maintenance. Nay, if he officiously gave evidence, it was maintenance; so that,, he must have had a subpoena or suppressed the truth. That such doctrine, repugnant to every honest feeling of the human heart, should be laid aside, must be expected.”
So in Campbell v. Jones, 4 Wend. R. 310, the Court say, that “ many acts were adjudged to be maintenance, which have long since ceased to be regarded as morally or legally censurable.” To the same effect is Brankerhoff v. Thallkimer in 3 Cow. R. 643.
It may be observed, that according to the early doctrine on this subject, it would be difficult for a person to give any aid or countenance to a party in a suit, without being involved in the guilt of maintenance. And yet it is apparent, that *56 without such aid or support, in very many cases, the right would be abandoned and the ends of justice defeated.
In 5 Com. Dig. 22, this offence is thus briefly and correctly defined: “ maintenance is, when a man maintains a suit or quarrel to the disturbance or hindrance of right,” — as when the remedial process of the law is perverted from its true purpose into an engine of oppression.
Now, having briefly stated this general view of the subject, what is the case before us ? Riggs, the plaintiff in this suit, being in the act of removing from this State, and having a suit then pending with a third person, engages and compensates the defendant to attend to it for him, and to pay the recovery, the object of the defence being, not to defeat the entire demand, but to obtain a credit to which he considered himself justly entitled. In plaintiff’s situation at the time, it was not convenient or even practicable to give any personal attention to his suit; he must therefore, employ, an agent, or abandon it; and if this rule be applicable to him,, so likewise, it will be applicable to others, in like circumstances, and in matters of greater interest and importance.
But we think, that a party acting in good faith, may lawfully employ an unprofessional agent, to aid and assist in conducting a suit, in like manner as he may employ an agent, in any other lawful business. It may often be indispensable to the just rights of the party, to have such assistance, when, from necessary absence or other cause, he cannot attend to the matter in person, as to cause process to issue, witnesses to be summoned, depositions to be taken, and other acts of agency, not necessarily professional, and which he could or would otherwise attend to in person.
Now the present case being merely an agency, there was nothing to bring it within the true meaning of illegal maintenance. There was nothing in it, “ to hinder or disturb the right, or in the least degree, to arrest the administration of *57 justice, or to discourage or oppress the adversary party.
But the true state of the case is, that the principal, who employed the defendant as his agent, is the only person who has suffered or could be injured by his conduct. He makes spoil of his employer and totally abandons the duty he had undertaken to perform, and his defence now is, that his engagement was unlawful, as having a tendency to obstruct the course of justice, and to oppress and injure the adversary party to the suit, and that therefore, he is not liable to restore what he received on a promise of performance. To permit such defence in the circumstances of this case, would truly be, as it seems to us, a perversion of the means of remedial j ustice.
To this view of the case, might be added another, equally conclusive, and that is, considering the poverty and disabled condition of the party, it would have been both lawful and charitable in the defendant, to aid and assist him in his defence against an unjust demand. Thus, in the State vs. Chitty, 1 Baily (S. C.) R. 401, it jwas held, that “if one lay out money in the prosecution of a suit to recover a close of which, his poor neighbor has been deprived, and without which he must lose it, he is no maintainer, because right, humanity and justice, would approve it.”
This case was here at a former term, on demurrer, (9 Hum, R. 72,) and was remanded. Green, J. in delivering the opinion, remarking that, for' various considerations which were stated, it did not appear that the contract was necessarily an unlawful one. And now, that it is again here, upon its facts, we are still of opinion, as will be seen, that it is not unlawful, and that the plaintiff is well entitled to his recovery. There is no other question, which we deem it material to notice.
Let the judgment be affirmed.